IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JULIUS GOLDRING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File No. |
| v. ) | |
| ) | 1:18-cv-1191-SCJ |
| ATLANTA POLICE DEPARTMENT ) | |
| OFFICERS VLADIMIR HENRY and ) | |
| JUAN RESTREPO, in their individual ) | |
| capacities, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff Julius "JuJu" Goldring ("Goldring" or "Plaintiff"), hereby files this her First Amended Complaint[1] against the Defendants, showing as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Goldring is a United States citizen and resident of Georgia.

2. Defendant Atlanta Police Department officer Vladimir Henry ("Defendant Henry") is an individual who was, at all times relevant herein, a police officer employed by the City of Atlanta who acted within the scope of his

---

[1] This amendment is filed pursuant to Fed. R. Civ. P. 15(a)(1)(B), which allows an amendment as a matter of course within 21 days of the service of a motion under Rule 12(b). Defendants served their Rule 12(b)(6) motion on August 3, 2018.

employment by and pursuant to the policies and procedures of the Atlanta Police Department. At all relevant times, Defendant Henry acted under color of state law.

3. Defendant Atlanta Police Department officer Juan Restrepo ("Defendant Restrepo") is an individual who was, at all times relevant herein, a police officer employed by the City of Atlanta who acted within the scope of his employment by and pursuant to the policies and procedures of the Atlanta Police Department. At all relevant times, Defendant Restrepo acted under color of state law.

## FACTUAL ALLEGATIONS

4. On October 10, 2015, Plaintiff and a companion were stopped by Defendants in midtown Atlanta.

5. Defendants stopped Plaintiff and her companion by accusing them of violating O.C.G.A. § 40-6-96, which makes it unlawful for any pedestrian to stand or stride along or adjacent to a roadway unless there is no motor vehicle traveling within 1,000 feet of such pedestrian.

6. Neither Plaintiff nor her companion violated O.C.G.A. § 40-6-96. Both walked on the sidewalk as they were stopped by Defendants.

7. Defendants stated to Plaintiff and her companion that they were being detained.

8. During Plaintiff's detention, Defendants Henry and Restrepo searched Plaintiff Goldring's purse.

9. While going through Plaintiff's purse, Defendant's found a stress ball.

10. The type of stress ball in Plaintiff's purse is commonly available in stores in Atlanta, and commonly used as branded advertisements for businesses.

11. The stress ball was the type of object was designed for a person to be able to squeeze as forcefully as they can to relieve stress.

12. There was nothing about the stress ball in Plaintiff's purse which could cause a reasonable police to believe that it was something other than a stress ball.

13. Plaintiff showed no outward manifestation of intoxication or reason for the officers to believe that she would possess illegal drugs.

14. Plaintiff did not have any evidence of any criminality on her person.

15. Plaintiff did not possess any item commonly carried or used by drug dealers or couriers.

16. Plaintiff did not show any outward signs of anxiety when Defendants located the stress ball. When Defendants stated that they were going to cut the ball open to inspect its contents, Plaintiff did not object because Plaintiff knew the ball did not contain any drugs whatsoever.

17. When Defendants found the stress ball in Plaintiff's purse, they immediately began to remark that they had found drugs and that Plaintiff was going to jail. Plaintiff believed they were joking.

18. Plaintiff is a transgender woman.

19. Defendants perceived Plaintiff as being a transgender woman.

20. As Defendants detained, searched, and interrogated Plaintiff, Defendants began to make derogatory comments about Plaintiff's gender.

21. Defendants called Plaintiff a "ladyboy" and referred to her as a "shim," which is a derogatory term for a transgender person.

22. Defendants laughed in response to each others' insults.

23. Defendants conducted an invasive public search of Plaintiff's body and genital area while Plaintiff was wearing a dress.

24. Defendants then arrested and transported Plaintiff to the Atlanta Police Department precinct by CNN Center.

25. In that precinct, Plaintiff was held in a small room while Defendant Henry performed various field tests to determine whether the substance in the stress ball was an illegal drug.

26. The tests were performed in Plaintiff's presence, and Plaintiff observed the tests being performed and heard the conversations between Defendants and other officers about the drug tests.

27. When the tests were negative, Defendants appeared visibly frustrated that the test results were negative.

28. The results of the various drug tests that were performed were all negative.

29. Both Defendants acknowledged the test results were negative.

30. Neither Defendant had any reason to doubt the validity of the result obtained from the field tests.

31. Field tests for drugs are known to produce high rates of false positives but are not known to produce high rates of false negatives. The fact that the tests were negative was a clear indication that the substance was not an illegal drug and was, in fact, the interior contents of a stress ball.

32. The context of the stress ball did not take the form of any commonly known illegal drug. While Defendants claimed that the substance was powder cocaine, its appearance did not resemble powder cocaine.

33. Plaintiff witnessed Defendants conduct the tests and heard the conversation between Defendants and other officers. Based on that information,

Plaintiff knew that every field test performed by Defendants was negative and did not indicate the presence of cocaine or any other drug.

34. The test results were negative because there were no drugs in the stress ball.

35. Plaintiff overheard one unknown officer remark to Defendant Henry as Defendant Henry shook one of the drug tests that he should "give it up, buddy" because the substance from the stress ball was clearly not narcotics or any other illegal substance.

36. Defendants did not give up, and ignored the negative tests. Contrary to common sense and objective evidence that the stress ball did not contain drugs, Defendants arrested Goldring and charged her with felony drug trafficking under O.C.G.A. § 16-13-31.

37. Defendants stated to Plaintiff that she would have to wait for test results to return from the GBI, and had Plaintiff booked into the Fulton County Jail.

38. Following Plaintiff's arrest, Defendant Vladimir Henry obtained an arrest warrant for Plaintiff's arrest. The warrant affidavit filed by Defendant Henry stated that the "accused did knowing sells manufactures, delivers, or brings into this state, and had the possession of Cocaine 60 grams with (the possession of 4

grams or more of, including heroin, as described in Schedules I and II, or 4 grams or more of any mixture containing any such substance in violation of this article commits the felony offense of trafficking in illegal drugs), to wit: the cocaine was found in the Accused purse contained in a ballon ball."

39. Defendant Henry also obtained an arrest warrant charging Plaintiff with violating O.C.G.A. § 40-6-96.

40. Defendant Restrepo knew that Defendant Henry obtained an arrest warrant, and that Defendant Henry would obtain the warrant as a matter of routine practice.

41. Defendant Restrepo jointly participated in the decision to obtain a warrant, and knew that Defendant Henry would claim in the warrant affidavit that Plaintiff possessed illegal drugs and had committed the offense of being a pedestrian in the roadway. Defendant Restrepo approved of Defendant Henry's actions.

42. Due to being charged with a felony drug offense, Plaintiff's bond was set at $25,500. Plaintiff was unable to pay that bond and remained incarcerated is spite of there being no indication that she possessed drugs.

43.  If Plaintiff had been charged only with pedestrian in the roadway under O.C.G.A. § 40-6-96, she would have been able to afford to pay her bond, or would have been released on a signature bond.

44.  Based upon the statements contained in the arrest warrant affidavit, the Fulton County District Attorney initiated criminal proceedings against Plaintiff.

45.  Both Defendants knew that after obtaining an arrest warrant, as a matter of routine course, the Fulton County District Attorney's Office would initiate criminal proceedings against Plaintiff based on the charges alleged in the arrest warrant.

46.  Plaintiff's subsequent indictment was premised upon Defendants' false claim that Plaintiff possessed cocaine.

47.  Defendant was also indicted for pedestrian in the roadway under O.C.G.A. § 40-6-96, which was also premised upon Defendants' false claim that she was illegally in the roadway.

48.  After Plaintiff's arrest, the contents from the stress ball were then transferred to the GBI Forensic Laboratory for further testing.

49.  The GBI's further testing was completed November 17, 2015.

50.  This testing confirmed that the contents of the stress ball were not cocaine or any other controlled substance.

51. Plaintiff's charges of trafficking in cocaine and pedestrian in roadway were both dismissed on March 21, 2016.

52. Plaintiff remained in jail from the date of her arrest on October 10, 2015, until March 22, 2016.

## COUNT ONE
### *Malicious Prosecution under 42 U.S.C. § 1983 and Georgia Law*

53. Defendants arrested Plaintiff for felony possession of cocaine and being a pedestrian in the roadway in spite of there being no arguable probable cause to believe that the substance possessed by Plaintiff was actually cocaine or that she was illegally in the roadway.

54. Defendants' act of arresting Plaintiff and obtaining an arrest warrant initiated criminal proceedings against her.

55. The criminal proceeding was predicated wholly on Defendants' statements that Plaintiff illegally possessed cocaine.

56. In fact, Defendants had positive proof that there was no reason to proceed with this charge against Plaintiff from the negative field tests. Instead, Defendants lied and fabricated evidence to support the trafficking charge.

57. Plaintiff's criminal prosecution terminated in Plaintiff's favor by virtue of a nolle pros order and dismissal entered on March 21, 2016.

58. Plaintiff was seized following the initiation of legal process in the form of an arrest warrant obtained on October 11, 2015 and/or an indictment issued on October 23, 2015.

59. Defendants are not entitled to official immunity under Georgia law because they knowingly fabricated the basis of Plaintiff's arrest by claiming that the substance in Plaintiff's stress ball was cocaine.

60. As a result of Defendants' actions which resulted in Plaintiff's incarceration and prosecution, Plaintiff has suffered the following damages: deprivation of freedom and liberty from October 11, 2015 to March 22, 2016; past and future mental and emotional distress as Plaintiff was made to suffer great mental anguish, humiliation and disgrace as a result of their prosecution and lengthy incarceration; past and future pain and suffering; and other damages.

61. Defendants' actions were the but for and proximate cause of the following damages to Plaintiff, among others: loss of freedom for 164 days, humiliation, fear, anxiety, terror, and significant abuse suffered while incarcerated at the Fulton County Jail.

62. Defendants' wrongful incarceration put Plaintiff at greater risk in the jail setting due to her being perceived as a transgender woman. Defendants'

knowledge of this is apparent from, among other things, the fact that Defendants verbally mocked Plaintiff's gender when he first encountered her.

## COUNT TWO
### *Punitive Damages under federal and Georgia Law*

63. By engaging in the above described conduct, Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences so as to entitle Plaintiff to punitive damages pursuant to O.C.G.A. § 51-12-5.1 and 42 U.S.C. § 1983.

## COUNT THREE
### *Attorneys' fees under O.C.G.A. § 13-6-11*

64. This count is alleged against all Defendants.

65. Plaintiff is entitled to recover expenses personally of litigation under O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense.

66. O.C.G.A. § 13-6-11 applies to tort actions arising under State law.

WHEREFORE, Plaintiff prays that this Court:

a) hold a trial by jury upon all of the issues so triable.

-12-

b) award compensatory, special, and punitive damages against Defendants in their individual capacities in an amount to be proven at trial;

c) award attorneys' fees under 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11;

d) tax the costs of this action against Defendants;

e) provide such and any other and further relief as the Court shall deem proper.

Respectfully submitted this 16th day of August, 2018.

| | |
|---|---|
| *s/ Zack Greenamyre* | *s/Jeffrey R. Filipovits* |
| Zack Greenamyre | Jeffrey R. Filipovits |
| Georgia Bar No. 293002 | Georgia Bar No. 825553 |
| | |
| MITCHELL & SHAPIRO LLP | FILIPOVITS LAW, PC |
| 3490 Piedmont Road, Suite 650 | 2900 Chamblee-Tucker Road, Bld. 1 |
| Atlanta, Georgia 30305 | Atlanta, Georgia 30341 |
| 404-812-4747 | 770-455-1350 |
| zack@mitchellshapiro.com | jeff@law.filipovits.com |

*Counsel for Plaintiff*

-13-

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using 14-point Times New Roman font.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed Plaintiff's Response to Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    RITA CHERRY

    REGINALD B. McCLENDON

This 16th day of August, 2018.

                                         s/Jeffrey R. Filipovits
                                         Jeffrey R. Filipovits
                                         Georgia Bar No. 825553