## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JULIUS "JUJU" GOLDRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | 1:18-cv-01191-WMR |
| ATLANTA POLICE DEPARTMENT | ) | |
| OFFICERS VLADIMIR HENRY and | ) | |
| JUAN RESTREPO, in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS VLADIMIR HENRY AND JUAN RESTREPO'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**COME NOW**, Officers Vladimir Henry ("Investigator Henry") and Juan Restrepo ("Officer Restrepo"), collectively, "Officers" and file this their Motion for Summary Judgment and Brief in Support. The undisputed material facts demonstrate that the Officers are entitled to qualified and official immunity and that all causes of action against them should be dismissed as a matter of law.

## I.     STATEMENT OF THE CASE

Plaintiff Julius "JuJu" Goldring ("Plaintiff")[1] sued Atlanta Police Department

---

[1] Plaintiff prefers to be addressed using the pronouns "she" and "her" and the title "Ms.", therefore, the Officers will refer to Plaintiff using the preferred pronouns

(APD) Investigator Henry and Officer Restrepo pursuant to 42 U.S.C. §1983 ("Section 1983" or "§1983") and O.C.G.A. § 13-6-11 alleging that she is entitled to recover compensatory, special, and punitive damages, and attorney's fees against the Officers for maliciously prosecuting her.[2] Specifically, Count I of Plaintiff's Complaint, hereinafter "*Complaint*", alleges that the Officers arrested her for felony possession of cocaine and being a pedestrian in the roadway without probable cause to support Plaintiff's charges.[3]

Count II of Plaintiff's *Complaint* alleges that Plaintiff is entitled to recover punitive damages against the Officers because the Officers engaged in, *inter alia*, willful misconduct, malice, fraud, and wantonness.[4] Count III alleges that Plaintiff is entitled to recover the expenses of litigation because the Officers acted in bad faith and were stubbornly litigious in the present matter.[5]

---

and title.  Deposition of Plaintiff Julius Goldring taken Feb. 12, 2019, hereinafter "Goldring", 5:19 – 6:5, attached hereto as Exhibit A.

[2] *See generally*, First Amended Complaint of Julius Goldring, Doc. 13, hereinafter "*Complaint*".

[3] *Complaint*, ¶ 53.

[4] *Id.* at ¶ 63.

[5] *Id*. at ¶ 65.

## II.   STATEMENT OF FACTS

This case arises out of the October 10, 2015 arrest of Plaintiff by the Officers.[6] On October 10, 2015, Plaintiff and at least one companion, Darrell Ford, were walking along 3rd Street NW in Atlanta, Georgia.[7] Before preparing to cross the street, Plaintiff "thought that no one was in [the Officers' marked police vehicle], because normally… lights would be on."[8] Plaintiff and Mr. Ford approached the corner of 3rd Street NW near Piedmont avenue and were "about to cross" when the Officers, who were sitting in the marked vehicle on 3rd Street, pointed their flashlights towards Plaintiff and Mr. Ford and instructed them to step closer to the Officers.[9] The Officers explained to Plaintiff and Mr. Ford that they were being arrested for jaywalking, in violation of O.C.G.A. § 40-6-96, "which makes it illegal

---

[6] *Id*. at ¶ 4.

[7] *Id*.; Goldring 16:11 – 17:16.

[8] Goldring 20:10 – 22.

[9] *Id*. at 19:9 – 20:22. Although the Officers testified that both Plaintiff and Mr. Ford jaywalked on the night in question, at the summary judgment stage, the facts are to be viewed in the light most favorable to the non-moving party. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996); Deposition of Officer Juan Restrepo taken April 9, 2019, hereinafter "Restrepo", 56:2 – 57:7, attached hereto as Exhibit B.

for any pedestrian to stand or stride along or adjacent to a roadway unless there is no motor vehicle traveling within 1,000 feet of such pedestrian."[10]

As Investigator Henry placed Mr. Ford into custody, Officer Restrepo placed Plaintiff into custody.[11] Incident to her arrest, Officer Restrepo asked Plaintiff whether he could search her purse.[12] Plaintiff consented to the search of her purse.[13] Officer Restrepo began an inventory search of Plaintiff's purse.[14] Inside Plaintiff's purse, Officer Restrepo found a little rubber bag.[15] Plaintiff stated that the rubber bag was a stress ball.[16] Officer Restrepo examined the rubber bag by pulling it and pressing it.[17] Given the feel and consistency of the substance contained within the rubber bag, Officer Restrepo believed that the bag contained cocaine based upon his prior experiences with encountering cocaine.[18]

---

[10] *Complaint*, at ¶ 5; *See* Deposition of Investigator Vladimir Henry taken February 12, 2019, hereinafter "Henry", 69:3 – 16, attached hereto as Exhibit C; *See* Restrepo 54:25 – 55: 9.

[11] *See* Goldring 26: 4 – 24.

[12] *Id*. at 27:22 – 25.

[13] *Id*. at 28:1 – 2.

[14] Restrepo 109: 9 – 25.

[15] *Id*. at 56:22 – 25.

[16] Goldring 28: 3 – 15; Photographs of Evidence Bag, Bates-labeled Goldring v. APD 000242 – 000244, attached hereto as Exhibit D.

[17] Goldring 28: 6 – 15.

[18] Restrepo 56: 22 – 25, 106: 6 – 19, 111:4 – 13.

Officer Restrepo asked Plaintiff if he could cut open the rubber bag, or stress ball.[19] Plaintiff consented to Officer Restrepo cutting open the rubber bag.[20] Officer Restrepo cut open the rubber bag in front of Plaintiff and observed the white substance contained in the rubber bag.[21] Officer Restrepo then placed the rubber bag and the remainder of its contents into an evidence bag located in the trunk of the Officers' vehicle.[22] The Officers placed both Plaintiff and Mr. Ford in the back of the police vehicle and transported Plaintiff and Mr. Ford to the APD CNN precinct.[23]

At the CNN precinct, Investigator Henry tested the substance contained in the rubber bag for the presence of cocaine using the NARK II Test Kit ("Test Kit").[24] Investigator Henry performed the test in the same room that Plaintiff and Mr. Ford were detained in.[25] Plaintiff witnessed Investigator Henry place portions of the substance contained in the rubber bag into the Test Kit.[26] Investigator Henry did not place any substance other than the substance contained in the rubber bag into the Test Kit.[27]

---

[19] Goldring 28: 8 – 15.
[20] *Id*. at 28:16 – 17.
[21] *Id*. at 29: 6 – 24; Restrepo 111:4 – 11.
[22] *See* Goldring 31:14 – 19.
[23] Restrepo 70:23 – 71:1; Goldring 32:23 – 33:8.
[24] Henry 83:13- 20, 85:11 – 25, 86:11 – 16; Restrepo 71:22 – 72:7.
[25] Goldring 36: 5 – 12.
[26] *Id*. at 34: 16 – 35:3.
[27] *Id*. at 38:12 – 14.

After Investigator Henry placed the substance in the Test Kit, he crushed each of the glass ampoules contained in the Test Kit at approximately the same time.[28] Investigator Henry watched as the solution in the Test Kit "show[ed] that [the substance] was positive."[29] Specifically, Investigator Henry observed the solution in the Test Kit turn purple in color and believed that "if it's darker than pink, then it's positive."[30] Based upon the positive result, Plaintiff was also charged with O.C.G.A. § 16-13-31, Trafficking in Illegal Drugs and later transported to the City of Atlanta Jail.[31] Officer Restrepo did not perform any tests on the substance.[32]

Investigator Henry performed another NARK II Test of the substance contained in the rubber bag at the APD Annex before handing the items over to the Property Unit for further testing analysis by the Georgia Bureau of Investigation (GBI).[33] On October 14, 2015, four days after Plaintiff's arrest, the rubber bag and

---

[28] Henry 90:18 – 91: 6. The Nark II Test Kit, also known as the Scott Reagent Modified, contains three glass ampoules, that when broken, react with the substance placed in the Test Kit to presumptively identify the substance as cocaine powder or cocaine base. Nark II Package Insert, attached hereto as Exhibit E; 2013 Nark II Training 071513, 56 – 57, attached hereto as Exhibit F.

[29] Henry 91:7 – 12.

[30] *Id*. at 92: 10 – 15.

[31] Offense Report, Bates-labeled Goldring 000004 – 000005, hereinafter "Offense Report", attached hereto as Exhibit G.

[32] Restrepo 72: 3 – 7; Henry 85:11 – 86:7; *See* Goldring 34:16 – 35:3, 36:5 – 23.

[33] Henry 85:11 – 19; Offense Report, at 000005.

substance were transported to the GBI Division of Forensic Sciences (DOFS).[34] Nine days later, on October 23, 2015, Plaintiff was indicted on charges of violating O.C.G.A. §§ 16-13-31 and 40-6-96.[35]

Approximately one month after her arrest, on November 17, 2019, the GBI DOFS released its report finding that the substance in the rubber bag contained no controlled substance in the tested sample.[36] However, Plaintiff remained in jail until March 22, 2016, approximately four months after the GBI DOFS report was released.[37] All charges against Plaintiff were ultimately nolle prossed.[38]

### III.   ARGUMENT AND CITATIONS OF AUTHORITY

#### A. Standard of Review

Summary Judgment should be granted when "the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."[39]   A factual dispute alone is not enough to defeat a properly pled

---

[34] GBI Official Report, Bates-labeled Goldring 000015 – 000016, hereinafter "GBI Report" attached hereto as Exhibit H.

[35] Indictment, Bates-labeled Goldring 000010, hereinafter "Indictment", attached hereto as Exhibit I.

[36] GBI Report, at Goldring 000015 – 000016.

[37] Proof of Incarceration, Bates-labeled Goldring 000002, hereinafter "Proof of Incarceration", attached hereto as Exhibit J; Goldring 64:13 – 65:10.

[38] Register of Actions, Bates-labeled Goldring v. APD 000116, hereinafter "Register of Actions", attached hereto as Exhibit K.

[39] FED. R. CIV. P. 56(a).

motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.[40]  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[41]  A fact is material if it may affect the outcome of the suit under the governing law.[42]

The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material facts that should be decided at trial.[43] "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answer to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."[44] If the non-movant's response consists of nothing "more than a repetition of his conclusional allegations, summary judgment for the defendant [i]s not only proper, but required."[45]

**B. <u>The Officers Are Entitled to Official and Qualified Immunity Based Upon Probable Cause to Arrest and Consent to Search Plaintiff.</u>**

**1. <u>The §1983 Malicious Prosecution Analysis</u>**

---

[40] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[41] *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

[42] *Allen v. Tyson Foods, Inc.*, 121 F. 3d 642, 646 (11th Cir. 1997).

[43] *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[44] *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

[45] *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

To establish a federal malicious prosecution claim under §1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures.[46] To prove a § 1983 malicious prosecution claim, under federal and Georgia law, a plaintiff must show the following: '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'[47]

### a. Plaintiff's Malicious Prosecution Claim Against Officer Restrepo Must Fail Because Officer Restrepo Neither Instituted Nor Continued The Criminal Prosecution of Plaintiff.

The first element required to prove a malicious prosecution claim under both federal and Georgia law is "a criminal prosecution instituted or continued by the present defendant."[48] However, "[i]n the case of a warrantless arrest, 'the judicial proceeding does not begin until the party is arraigned or indicted."[49] "Thus, [a] plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of the [indictment]."[50]

---

[46] *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).
[47] *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008).
[48] *Id*.
[49] *Kingsland*, 382 F.3d at 1235.
[50] *Id*.

In the present matter, Officer Restrepo's only interactions with Plaintiff occurred during her arrest, thirteen days prior to her indictment.[51] Given that Plaintiff's arrest cannot serve as the predicate deprivation of liberty for a malicious prosecution claim because it occurred prior to her indictment, Plaintiff has failed to establish the first element of a malicious prosecution claim against Officer Restrepo. Plaintiff has not and cannot prove that she was seized by Officer Restrepo in relation to the prosecution of her case as the judicial proceeding had not begun until she was indicted.[52] As a result, Plaintiff's §1983 malicious prosecution claim against Officer Restrepo necessarily fails.

**b. Plaintiff's Malicious Prosecution Claim Against Investigator Henry Is Without Merit Because Investigator Henry Had Actual Probable Cause To Arrest Plaintiff For Violating O.C.G.A. §40-6-96.**

The Supreme Court of the United States has consistently held that, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."[53] Probable cause "means less than evidence which would justify condemnation … it imports a seizure made under circumstances which would

---

[51] *See* Goldring 26: 4 – 24; Indictment, at Goldring 000010.

[52] *Kingsland*, 382 F.3d at 1235.

[53] *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

warrant suspicion."[54] In the Eleventh Circuit, it has long been held that "[t]o require an arresting officer to prove every element of a crime 'would negate the concept of probable cause and transform arresting officers into prosecutors.'"[55] Probable cause does, however, require that "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[56]

In her deposition, Plaintiff stated that at the time she was summoned by the Officers she was on the corner of 3rd Street "about to cross" the street.[57] Before preparing to cross the street, Plaintiff "thought that no one was in [the Defendant Officer's police vehicle], because normally… lights would be on."[58] Although she stated that she was "on the corner" and "about to cross" Plaintiff has produced no evidence to demonstrate that she was "about to cross" 3rd Street within the crosswalk or that there were no cars traveling in the intersection that she was "about to cross".[59] On the other hand, however, both Officers testified in their depositions that Plaintiff

---

[54] *Id*.
[55] *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).
[56] *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).
[57] Goldring 19:9 – 20:22.
[58] *Id*. at 20:10 – 22.
[59] *See generally*, Goldring.

and Mr. Ford crossed the street while vehicles were moving in the intersection.[60]

Since probable cause is determined by the facts and circumstances within the

knowledge of the officers which would lead a reasonable person to believe that a

suspect has committed or is **about to** commit a crime[61], faced with the circumstances

presented to them, the Officers had probable to believe that Plaintiff committed or

was **about to** commit a violation O.C.G.A. § 40-6-96.

O.C.G.A. § 40-6-96 states in relevant part that:

> (b) Where a sidewalk is provided, it shall be unlawful for
> any pedestrian to stand or stride along and upon an
> adjacent roadway unless here is **no motor vehicle**
> **traveling** within 1,000 feet of such pedestrian on such
> roadway or the available sidewalk presents an imminent
> threat of bodily injury to such pedestrian.

Plaintiff has failed to produce evidence contrary to the Officers' testimony that she

was actively striding along and upon an adjacent roadway or about to stride along

and upon an adjacent roadway while motor vehicles traveled thereupon. Plaintiff has

simply alleged in her *Complaint* that "[n]either Plaintiff nor her companion violated

O.C.G.A. § 40-6-96."[62] However, at the motion for summary judgment stage,

Plaintiff is required to move beyond the allegations alleged in her *Complaint* to

---

[60] Henry, 69:3 – 16; Restrepo 54:25 – 55: 9.
[61] *Rankin*, 133 F.3d at 1435.
[62] *Complaint*, ¶ 6.

demonstrate that there are genuine issues of material fact for trial.[63] Given Plaintiff's failure to demonstrate that the Officers lacked probable cause to arrest Plaintiff, the Officers are entitled to summary judgment in their favor.

### 2. <u>The Qualified Immunity Analysis</u>

Qualified immunity provides "complete protection" for government officials, sued in their individual capacities, for performance of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[64] It protects against liability and the need to defend against baseless lawsuits.[65]

Qualified immunity "is both a defense to liability and a limited "entitlement not to stand trial or face the other burdens of litigation."[66] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[67] "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[68] Therefore,

---

[63] *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).
[64] *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013).
[65] *Lee*, 284 F.3d at 1194.
[66] *Iqbal*, 556 U.S. at 672.
[67] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).
[68] *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018)(cert. denied).

"questions of qualified immunity <u>must</u> be resolved 'at the earliest possible stage in litigation.'"[69]

The qualified immunity analysis consists of a preliminary inquiry, followed by two additional analyses. As a preliminary matter, the officer must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[70] Once it is established that the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is *not* appropriate.[71]

For the plaintiff to establish that qualified immunity is not appropriate the plaintiff must show (1) a violation of a constitutional right **and** (2) the constitutional right at issue was clearly established at the time of the alleged misconduct.[72] "The burden thus lies with Plaintiff to show that his arrest violated a constitutional right and that the right was clearly established at the time of the arrest."[73] "The judges of the district courts and the courts of appeals . . . [are] permitted to exercise their sound

---

[69] *Gonzalez*, 325 F.3d at 1233 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (emphasis supplied); *see also Pearson v. Callahan,* 555 U.S. 223, 232 (2009) ("we <u>repeatedly have stressed</u> the importance of resolving immunity questions" as early as possible in the litigation)(emphasis supplied).

[70] *Lee*, 284 F.3d at 1194.

[71] *Id*. (emphasis supplied).

[72] *Gates*, 884 F.3d at 1297.

[73] *Id.*

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[74]

### a. The Officers are entitled to qualified immunity because Plaintiff's constitutional rights were not violated when she was arrested by the Officers.

As a threshold matter, the Officers were acting within their discretionary authority then they arrested Plaintiff and Mr. Ford.[75] Next, the analysis turns to whether Plaintiff's constitutional rights were violated when she was arrested for violating O.C.G.A. §40-6-96. However, "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."[76]

As outlined above, the Officers had actual probable cause to arrest Plaintiff.[77] The Officers observed Plaintiff and Mr. Ford committing or about to commit the offense of jaywalking in violation of O.C.G.A. §40-6-96.[78] Given the information that the Officers possessed at the time of the arrest, a reasonable officer in the same circumstances would have believed that probable cause existed to arrest Plaintiff.

---

[74] *Pearson*, 555 U.S. at 236.

[75] *Hochstein v. Demings*, 723 Fed.Appx. 938, 945 (11th Cir. 2018)(Officer was engaged in discretionary function when he arrested Plaintiff).

[76] *Gates*, 884 F.3d at 1297.

[77] *See supra*, Section II(B)(1)(b).

[78] Henry, 69:3 – 16; Restrepo 54:25 – 55: 9.

Additionally, however, in interpreting the Supreme Court's precedent regarding probable cause and qualified immunity, the Eleventh Circuit has held that "[e]ven without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff."[79] "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant <u>could</u> have believed that probable cause existed to arrest."[80]

Assuming *arguendo* that the Officers did not have actual probable cause to arrest Plaintiff, the totality of the record demonstrates that the Officers had arguable probable cause to arrest Plaintiff. "In determining whether arguable probable cause exists, the issue is not whether the plaintiff was in fact guilty of the charged offense, but rather, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'"[81]

Here, Plaintiff has produced no evidence tending to demonstrate that a reasonable officer in the Officers position could not have possibly believed that

---

[79] *Lee*, 284 F.3d at 1195.

[80] *Redd v. City of Enterprise*, 140 F.3d 1378, 1383-84 (11th Cir. 1998).

[81] *Jones v. Michael*, 656 Fed. Appx. 923, 927 (11th Cir. 2016) (unpublished) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).

probable cause existed to arrest Plaintiff. Plaintiff simply stated that she was "about to cross" at the corner of 3rd Street when the Officers detained and arrested her.[82] Plaintiff has provided no other evidence concerning whether there were vehicles also present in the intersection when she was "about to cross" the street. A reasonable officer viewing Plaintiff "about to cross" the street while vehicles traveled in the intersection, could have believed that Plaintiff was about to commit the offense of jaywalking. Since the Officers had, at least, arguable probable cause to arrest Plaintiff, and Plaintiff's arrest for violating O.C.G.A. § 40-6-96 did not violate a clearly established right of which the Officers should have known, they are entitled to qualified immunity.[83]

Given that the Officers had arguable probable cause to arrest Plaintiff for jaywalking, this Court "need not determine whether [the Officers] had arguable probable cause to arrest Plaintiff for cocaine possession."[84] "[T]he Eleventh Circuit law dictates that, because Defendant had arguable probable cause to arrest Plaintiff for [jaywalking], the possibility that Defendant intentionally arrested Plaintiff for possession of illegal drugs without arguable probable cause is moot."[85] Thus, a

---

[82] Goldring 19:9 – 20:22.
[83] *Hochstein*, 723 Fed.Appx. at 947.
[84] *Butler v. Tremblay*, 2017 WL 4422353, at *7 (N.D. GA May 9, 2017).
[85] *Id.* at *8 (citing *Wilkerson v. Seymour*, 736 F.3d 974, 978-79 (11th Cir. 2013)).

finding of arguable probable cause to arrest for the jaywalking offense ends the qualified immunity analysis as to Plaintiff's malicious prosecution claims regarding the trafficking in illegal drugs offense.

### b. The inventory search of Plaintiff's purse did not violate clearly established law.

Assuming *arguendo* that the Officers did not have at least arguable probable cause to arrest Plaintiff for jaywalking, the Officers are still entitled to qualified immunity against Plaintiff's malicious prosecution claims because the white powdery substance was discovered during an inventory search. "Inventory searches of an arrestee's personal property are a 'well-defined exception to the Fourth Amendment's warrant requirement. When police take custody of a bag, suitcase, box, or any other container, they may open it in order to itemize its contents pursuant to standard inventory procedures."[86] Incident to Plaintiff's arrest in the present matter, Officer Restrepo began to inventory her purse pursuant to APD inventory procedures.[87] Plaintiff also consented to Officer Restrepo's search of her purse.[88] Therefore, the Officers were lawfully in  possession of Plaintiff's purse incident to

---

[86] *U.S. v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010).
[87] Restrepo 56:22 – 25, 109:21 – 110:9; Henry 72:2 – 73:5.
[88] Goldring 27:22 – 28:2.

her arrest and were authorized to search the purse pursuant to inventory search jurisprudence in this circuit, APD procedures, and Plaintiff's consent.[89]

### c.   The Officers had probable cause to charge Plaintiff with violating O.C.G.A. § 16-13-31 based upon the positive drug test reading.

Incident to her arrest, a rubber bag was found in Plaintiff's purse.[90] Investigator Henry used the Nark II Test Kit to test the substance for the presence of cocaine powder and/or cocaine base.[91] The substance contained in the rubber bag tested positive for cocaine.[92] However, the GBI DOFS Report, conducted approximately one month after Plaintiff's arrest, found that its test sample of the substance inside the rubber bag did not contain a controlled substance.[93]

Under the qualified immunity standard, an officer is entitled to qualified immunity even if he "reasonably but mistakenly conclude[s] that probable cause is present."[94] "The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable merely because it appears, in hindsight, that he might have made a mistake."[95] Thus, officers who make reasonable

---

[89] *Farley*, 607 F.3d at 1333; Henry 72:2 – 73:5.
[90] Restrepo 56:22 – 25; Exhibit C.
[91] Henry, 83:13- 20, 85:11 – 25, 86:11 – 16; Exhibit E.
[92] Henry 91:7 – 92:15.
[93] GBI Report, at Goldring 000015 – 000016.
[94] *Hochstein v. Demings*, 723 Fed.Appx. 938, 945 (11th Cir. 2018).
[95] *Gates*, 884 F.3d at 1298.

mistakes in determining whether probable cause exists are entitled to qualified immunity.

In the present action, Investigator Henry reasonably believed that probable cause existed to charge Plaintiff with violating O.C.G.A. § 16-13-31 given the positive result he received after using the Test Kit. Investigator Henry placed only the substance contained in the rubber bag into the Test Kit and broke all three ampoules in the Test Kit.[96] According to Investigator Henry's reading of the Test Kit results, the substance contained in the rubber bag tested positive for cocaine because the solution inside the Test Kit was darker than pink.[97] Investigator Henry is therefore entitled to qualified immunity because his belief, even if mistaken, that the substance tested positive for cocaine, was reasonable.

### 3. The Official Immunity Analysis

Under Georgia law, official immunity "protects an officer from personal liability arising from his performance of official functions as long as the officer did not act with actual malice or actual intent to cause injury."[98] "Similar to qualified immunity, official immunity is intended to 'preserve the public employee's independence of actions without fear of lawsuits and to prevent a review of his or

---

[96] Goldring 38:12 – 14; Henry 90:18 – 91: 6.
[97] Henry 92: 10 – 15.
[98] *Gates*, 884 F.3d. at 1304.

her judgment in hindsight.'"[99] "Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies."[100]

Once it is established that the official was acting within the scope of their discretionary actions, plaintiff must prove that the accused official acted with "actual malice" or "actual intent to cause injury" to overcome official immunity.[101] "The Georgia Supreme Court has defined actual malice in this context to mean any 'deliberate intention to do wrong.'"[102]

> As such, actual malice is not established merely by showing that the defendant acted with ill will. Nor does actual malice encompass merely the reckless disregard for the rights and safety of others. Likewise, the phrase actual intent to cause injury—as used in Georgia's official immunity provision—means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.[103]

In this context, the intent requirement denotes a wicked or evil motive.[104] "Evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to

---

[99] *Id.* (*quoting Cameron v. Lang*, 274 Ga. 122, 122-23 (2001)).

[100] *Reed v. DeKalb Cty.*, 264 Ga. App. 83, 86 (2003).

[101] *Gates*, 884 F.3d at 1304 (*citing Adams v. Hazelwood*, 271 Ga. 414, 414-415 (1999)).

[102] *Id.* (*quoting Adams*, 217 Ga. 414).

[103] *Id.* (internal quotations marks omitted)(*citing West v. Davis*, 767 F.3d 1063, 1073 (11th Cir. 2014)).

[104] *Selvy v. Morrison*, 292 Ga. App. 702, 705 (2008).

penetrate official immunity."[105]   The Court's analysis is not backward looking to determine what the officer should have done, but is limited *only* to whether his or her behavior showed a deliberate intent to commit a wrongful act.[106]

There is no evidence that the Officers acted with actual malice in arresting Plaintiff. The record is devoid of any facts that support the conclusion that the Officers intended to injure or harm Plaintiff in any way. In fact, the evidence in this matter demonstrates that the Officers were patrolling the area of 3rd Street on October 10, 2015 intending to prevent crimes from occurring in that area.[107] The record clearly demonstrates that the Officers harbored no ill will toward Plaintiff as both officers have individually made similar arrests of other pedestrians for jaywalking.[108] Thus, Plaintiff has failed to produce a scintilla of evidence demonstrating that the Officers acted with a deliberate intention to commit a wrongful act when arresting Plaintiff. As a result, the Officers are entitled to official immunity against Plaintiff's state law claims for punitive damages and attorney's fees. The Officers have shown no malice towards Plaintiff as required under Georgia law that would strip them of

---

[105] *Id.* at 706 (quoting *Title v. Corso*, 256 Ga. App. 859, 862 (1989)).
[106] *Id.* at 707 (emphasis in original).
[107] Restrepo 54:25 – 55:9; Henry 69:3 – 16.
[108] Restrepo 24:21 – 25:1; Henry 40:13 – 41:1.

their entitlement to official immunity and subject them to personal liability for Plaintiff's claims.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Officers are entitled to qualified and official immunity against Plaintiff's claims. The Officers had actual, or, at least, arguable probable cause to arrest Plaintiff for violating O.C.G.A. § 40-6-96 and O.C.G.A. § 16-13-31. Thus, the Defendants are entitled to dismissal of the state and federal claims against them.

This 28th day of June, 2019.

Respectfully Submitted,

*/s/ Staci J. Miller*
**STACI J. MILLER**
Assistant City Attorney
Georgia Bar No. 601594
Phone: 404-546-4083
Email: sjmiller@atlantaga.gov
***Attorneys for City Defendants***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JULIUS "JUJU" GOLDRING, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | 1:18-cv-01191-WMR |
| ATLANTA POLICE DEPARTMENT | ) | |
| OFFICERS VLADIMIR HENRY and | ) | |
| JUAN RESTREPO, in their individual | ) | |
| capacities, | ) | |
| | ) | |
|     Defendants. | ) | |

## CERTIFICATION

Counsel for the City Defendants hereby certifies that this pleading has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

Respectfully Submitted,

*/s/ Staci J. Miller*
**STACI J. MILLER**
Assistant City Attorney
Georgia Bar No. 601594
Phone: 404-546-4083
Email: sjmiller@atlantaga.gov
***Attorneys for City Defendants***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JULIUS "JUJU" GOLDRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No. |
| | ) | 1:18-cv-01191-WMR |
| ATLANTA POLICE DEPARTMENT | ) | |
| OFFICERS VLADIMIR HENRY and | ) | |
| JUAN RESTREPO, in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties with a copy of the foregoing **DEFENDANT OFFICERS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**, via the CM/ECF Electronic Filing System upon all counsel of record.

This 28th day of June, 2019.

RESPECTFULLY SUBMITTED,

*/s/ Staci J. Miller*
**STACI J. MILLER**
Assistant City Attorney
Georgia Bar No. 601594
Phone: 404-546-4083
Email: sjmiller@atlantaga.gov
***Attorneys for City Defendants***