[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-13820

_____

JULIUS GOLDRING,

Plaintiff-Appellee,

*versus*

VLADIMIR HENRY,
JUAN RESTREPO,
Atlanta Police Department Officers, in their
individual capacities,

Defendants-Appellants.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-01191-WMR

————————————

Before Rosenbaum, Luck, and Julie Carnes, Circuit Judges.

Per Curiam:

Julius "JuJu" Goldring sued Officers Vladimir Henry and Juan Restrepo for malicious prosecution under 42 U.S.C. section 1983 and Georgia law. She alleged that the officers falsely accused her of jaywalking and trafficking in cocaine to obtain a warrant for her arrest. The officers moved for summary judgment, arguing that they were entitled to qualified and official immunity. After careful review of the record and with the benefit of oral argument, we affirm the district court's denial of summary judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Everyone agrees that, on the evening of October 10, 2015, Goldring was walking in Midtown, Atlanta; Officers Henry and Restrepo initially arrested her for jaywalking; they took her to the police station; at the police station, Officer Henry field tested the powdery contents of a stress ball found in Goldring's purse; and the officers got a warrant for Goldring's arrest for jaywalking and trafficking in cocaine. But beyond these undisputed facts, Goldring

and the officers had sharply conflicting accounts about what happened that night.

According to Goldring, she was "walking up a sidewalk" with her boyfriend, Darrell Ford, and two of his friends.  They got to an intersection and "stood on the corner" waiting to cross the street.  That's when the officers stopped her group.  The officers detained Goldring and Ford but let the other two people go.  The officers told Goldring they stopped her because she had jaywalked.  Goldring protested because she was "standing on the sidewalk" when the officers seized her.  She maintained that she "was on the sidewalk or in a crosswalk at all times while walking that evening."

After the officers stopped Goldring, Officer Restrepo frisked her, searched her purse—to which Goldring consented—and found a stress ball.  It was "a regular stress ball" with a metal clip. Goldring told Officer Restrepo that it was just a stress ball and said he could open it.  Officer Restrepo cut the ball open, revealing a white "powdery, sandy kind of substance."  The officers suspected that this powder was cocaine but they weren't sure—in Officer Restrepo's words, there are "a jillion powders that could be white." The powder inside Goldring's stress ball was just sand.

The officers transported Goldring and Ford to the police station so they could test the powder inside the stress ball.  Officer Henry used a NARK II test kit to perform the test.  He didn't have any specific training in drug identification or in how to use the NARK II test.

Here's how the NARK II test works. The officer is supposed to:  (1) place a specific amount of the suspected cocaine into a testing pouch and seal it; (2) break the first ampoule (a glass capsule containing the testing liquid) and shake the pouch, which forms a blue solution; (3) break the second ampoule and shake the pouch again, which forms a pink solution if the test is positive; and (4) break the third ampoule and shake the pouch a third time—if cocaine is present, holding the pouch at an angle forms a layer of pink liquid over a layer of blue liquid.  Only "pink over blue" qualifies as a positive result.  Any other result, including a uniform color, is a negative result.  And the ampoules must be broken in the correct sequence; breaking them all at once would not result in a "meaningful finding."

Goldring witnessed Officer Henry perform the field test.  He "looked frustrated," "huffed and puffed" throughout the test, and shook the pouches containing the powder "with aggression like he was mad."  Although Officer Henry used multiple test kits, Goldring saw that the liquid inside never changed color.  She testified that a third officer saw what Officer Henry was doing and "kept telling him that it was nothing" and was "not a drug," referring to the powder in the test pouches, and told Officer Henry to "[g]ive it up buddy."

The officers tell a different story about what happened during Goldring's arrest in Midtown and what happened back at the police station.  As to the jaywalking incident, the officers testified that Goldring was only with Ford that night (contrary to

Goldring's testimony that she was with two more people) and illegally crossed the street without using a crosswalk. Goldring was "walking in the middle of the street," the officers maintained, when she was seized.

As to the field test, Officer Henry testified that he performed the test twice—both times crushing the three ampoules simultaneously. The liquid then turned a "bluish-purple." Officer Henry thought this was a "faint positive," incorrectly believing that "if it's darker than pink, then it's positive," while "if it just showed pink" it was negative. Officer Restrepo testified that he didn't watch the test and Officer Henry later told him the result was positive. But in an internal affairs report, Officer Restrepo stated that Officer Henry showed him the test result—a "faint positive."

There's no dispute about what happened after the field test. The officers applied for a warrant for Goldring's arrest for walking in a roadway, in violation of O.C.G.A. section 40-6-96, and trafficking in cocaine, in violation of O.C.G.A. section 16-13-31. Officer Restrepo couldn't remember whether he helped draft the warrant application. Officer Henry stated that Officer Restrepo wrote the warrant application's narrative and spoke to the magistrate judge about the warrant by video call. Officer Henry's signature is on the warrant application, but he couldn't recall whether Officer Restrepo signed it on his behalf.

The magistrate judge issued the warrant that same day. Goldring's bond was set at $25,500, which she couldn't afford. On October 23, 2015, state prosecutors charged Goldring with

trafficking in cocaine and jaywalking.  On November 17, 2015, the Georgia Bureau of Investigations determined that the powder in Goldring's stress ball wasn't cocaine. But the state didn't dismiss the charges until March 21, 2016.  Goldring spent five months in jail before the charges were finally dropped.

Goldring then sued the officers for malicious prosecution under section 1983 and Georgia state law.  She alleged that the officers lacked arguable probable cause to believe she had jaywalked or trafficked in cocaine.  Goldring also alleged that the officers "lied and fabricated evidence to support the trafficking charge."

The officers moved for summary judgment.  Officer Restrepo argued that he didn't prosecute Goldring; the prosecution began with her indictment, Officer Restrepo maintained, and his role in the case was limited to Goldring's warrantless arrest.  Both officers argued they were entitled to qualified immunity because they had actual or arguable probable cause to arrest Goldring for jaywalking and trafficking in cocaine.  And the officers argued they were entitled to official immunity as to her state law claim because they hadn't acted with actual malice.

Goldring responded that:  (1) there was no probable cause or arguable probable cause to arrest her for jaywalking; (2) there was no probable cause or arguable probable cause to arrest her for trafficking in cocaine because Officer Henry's statements in the warrant affidavit were intentionally false; (3) a jury could reasonably find that Officer Restrepo knew the test results were

negative and helped draft the warrant application; and (4) the officers acted with actual malice because they knew they lacked probable cause and still sought a warrant.

The district court held a hearing on the officers' motion for summary judgment and orally denied the motion.  In the district court's view, "[t]his case [was] crying out for a trial."  The district court said that "maybe the officers just made a mistake," but there was "enough evidence in the record to suggest that it might not have been a mistake."

The district court entered a one-page order denying summary judgment.  The district court wrote that because "the evidence on the record reflects that issues of fact still remain," summary judgment was "not proper at this time."

## STANDARD OF REVIEW

"A district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' . . . ."  *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (alteration adopted and citation omitted).  We review de novo the district court's denial of summary judgment, *id.*, viewing the evidence and factual inferences in the light most favorable to the non-moving party, *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016).

## DISCUSSION

The officers argue that they had probable cause or arguable probable cause to arrest Goldring for jaywalking and trafficking in cocaine, entitling them to qualified immunity as to her section 1983 claim.   The officers also argue that they didn't act with actual malice, entitling them to official immunity as to her state law claim. And Officer Restrepo argues that he wasn't the one that prosecuted Goldring—the district attorney filed the charges—and he didn't prepare the warrant application.

### Qualified Immunity and Malicious Prosecution

The main issue before us is whether the officers are entitled to qualified immunity as to Goldring's section 1983 malicious prosecution claim.   They are not.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"   *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).   Officers who act within their discretionary authority are "entitled to qualified immunity under [section] 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).   Because Goldring doesn't contest that the officers acted within their discretionary authority, she "bears the burden of proving that they are not entitled to qualified immunity."   *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020).

Goldring argues that the officers "violated [her] clearly established right under the Fourth Amendment to be free from an unreasonable seizure as a result of a malicious prosecution." *See id.* This claim requires a seizure "pursuant to legal process." *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (citation omitted). A malicious prosecution occurs "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). In these circumstances, legal process "has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Id.* at 918–19.

To make out this claim, Goldring must show "a violation of [her] Fourth Amendment right to be free of unreasonable seizures" along with "the elements of the common law tort of malicious prosecution." *Williams*, 965 F.3d at 1157 (citation omitted). To prove a violation of her Fourth Amendment rights, Goldring must establish: "(1) that the legal process justifying [her] seizure was constitutionally infirm and (2) that [her] seizure would not otherwise be justified without legal process." *Id.* at 1165. Her arrest warrant was constitutionally infirm if she establishes that the officers "intentionally or recklessly made misstatements or omissions necessary to support the warrant."[1] *Id.* As for the

---

[1] A plaintiff can also show that her seizure was constitutionally infirm by establishing that the officer "should have known that his [warrant] application failed to establish probable cause." *Williams*, 965 F.3d at 1165. Because there is a genuine dispute about whether the officers' accusations against Goldring

common law elements of malicious prosecution, Goldring must show that the officers "'instituted or continued' a criminal prosecution against [her], 'with malice and without probable cause,' that terminated in [her] favor and caused damage to [her]." *Id.* at 1157 (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019)).

There's "significant overlap" between a plaintiff's burden to establish that she suffered a seizure pursuant to legal process that violated the Fourth Amendment and her burden to establish the common law elements of malicious prosecution. *Luke v. Gulley*, 975 F.3d 1140, 1143 (11th Cir. 2020). "If a plaintiff establishes that a defendant violated [her] Fourth Amendment right to be free from seizures pursuant to legal process, [s]he has also established that the defendant instituted criminal process against [her] with malice and without probable cause." *Id.* at 1144.

Here's how qualified immunity intersects with a malicious prosecution claim. The "law is clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen if such false statements were necessary to the probable cause." *Williams*, 965 F.3d at 1168–69 (alterations adopted and citation omitted). When a plaintiff presents a genuine dispute of fact as to whether an officer

---

were intentionally false, we do not address whether the officers should have known that the warrant application failed to establish probable cause.

"intentionally or recklessly made misstatements" in a warrant application, which misstatements were necessary to establish probable cause, and the plaintiff's pretrial detention "could not be justified as a warrantless arrest," the plaintiff has "established a genuine dispute over whether the officers violated [her] clearly established rights under the Fourth Amendment."  *Id.* at 1165, 1167, 1169.

A.  Whether Officer Restrepo instituted Goldring's criminal prosecution

But first we consider whether Officer Restrepo can be held liable for the contents of the warrant application.  He argues that he wasn't the one that prosecuted Goldring because, in a warrantless arrest case, the judicial proceeding only begins when the defendant "is arraigned or indicted."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004).  Officer Restrepo argues that Goldring was prosecuted when she was indicted by the district attorney.

Goldring's malicious prosecution claim arises from her seizure pursuant to the arrest warrant, and "[o]btaining an arrest warrant is one of the initial steps of a criminal prosecution." *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).  This case is nothing like *Kingsland*, where the police arrested the plaintiff on the scene following a crash for driving under the influence and didn't seek or obtain an arrest warrant.   382 F.3d at 1224–25. Rather, this case is like *Williams*, where the plaintiff was initially

arrested without a warrant but later held on an arrest warrant. *965 F.3d* at 1153, 1155.

Indeed, the case before us involves a claim of malicious prosecution and not one for false arrest. Our discussion in *Williams* explains the difference between the two—the former is based on a warrantless arrest and the latter on an arrest following the issuance of a warrant. *See id.* at 1157–58. Thus, the issuance of the warrant against Goldring—not her indictment—was when the criminal prosecution was instituted against her for purposes of her malicious prosecution claim. *See id.* at 1158 ("Of course, warrant-based seizures fall within th[e] category" of malicious prosecutions).

Officer Restrepo also argues that his interaction with Goldring was limited to her warrantless arrest and he didn't sign the warrant application. Thus, he maintains that Goldring's malicious prosecution claim against him fails because he did not initiate a criminal prosecution against her. We disagree. Although Officer Restrepo didn't remember whether he helped write the warrant application, Officer Henry testified that Officer Restrepo wrote the narrative for the warrant application and spoke to the magistrate judge about it. This is summary judgment evidence from which a reasonable jury could find that Officer Restrepo had assisted in drafting the warrant application and getting it signed by the magistrate judge. Officer Restrepo was involved in initiating the prosecution against Goldring.

As for Officer Henry, he has not advanced any arguments that he did not initiate a criminal prosecution against Goldring. Nor could he because the record is clear that he signed the affidavit supporting the arrest warrant presented to the magistrate judge.

### B. The Jaywalking Charge

As an initial matter, we reject the notion that if probable cause existed for at least one of the charges, then the officers may avoid a malicious-prosecution claim. Our decision in *Williams* makes clear that the "any-crime" rule—under which officers are insulated from false-arrest claims as long as probable cause exists to arrest the suspect for some crime—does not apply in the malicious-prosecution context. *Williams*, 965 F.3d at 1158–62. Rather, arguable probable cause must exist for each of the charged crimes: here, jaywalking and trafficking in cocaine.

Under Georgia law, a person may not "stand or stride along and upon an adjacent roadway unless there is no motor vehicle traveling within 1,000 feet of such pedestrian on such roadway" if a "sidewalk is provided." O.C.G.A. § 40-6-96(b). A violation of this statute is a misdemeanor. *Id.* § 40-6-1(a). The officers argue they had actual and arguable probable cause to arrest Goldring for jaywalking because they saw her crossing the street without using a crosswalk.

Goldring "bears the burden of creating a genuine dispute about whether the officers' accusation" that she jaywalked "was intentionally false [or reckless] and not, for example, a mistaken

belief on the part of the officers." *See Williams*, 965 F.3d at 1165. Conclusory allegations or speculation will not do. *Id.* Goldring must "'identify affirmative evidence from which a jury could find that' the officers lied when they stated" in the warrant application that she jaywalked. *See id.* at 1166 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

That kind of affirmative evidence is present here. Both officers alleged that they saw Goldring jaywalking; but "a reasonable jury could find that the officers lied" in making this accusation. *See id.* Goldring stated that at the time of the incident she was "on the corner . . . about to cross" the street when the officers stopped her. She maintained that she had walked on the sidewalk or on crosswalks "at all times" that night. If one credits Goldring's version of the facts (as we must at this stage), she was on the sidewalk when the officers detained her, she never crossed a street that night without using a crosswalk, and she didn't violate section 40-6-96(b).

Thus, "the record presents a genuine dispute about whether" the allegation that Goldring jaywalked was a misstatement and, if so, whether that "misstatement in the warrant application was 'made either intentionally or in reckless disregard for the truth.'" *See id.* at 1166 (citation omitted). If Goldring was standing on the sidewalk, as she alleged, "the chances are low that both officers were subjectively mistaken" and genuinely believed she was standing "in the middle of the street." *See id.* In other words, "the record supports an inference that *someone* is lying."

*Id.*; *Grider v. City of Auburn*, 618 F.3d 1240, 1258 (11th Cir. 2010) (holding that the district court correctly denied qualified immunity where the plaintiff and the officer had "completely different versions" of the incident and the plaintiff "unambiguously denie[d]" committing the crime).

The next question is "whether, after deleting the misstatement," the warrant "affidavit is insufficient to establish probable cause." *Paez*, 915 F.3d at 1287 (cleaned up). If we remove the allegation from the warrant application that Goldring was in the street, "probable cause evaporates . . . because it was the only fact in the affidavit supporting probable cause for" jaywalking. *See Williams*, 965 F.3d at 1166–67 (cleaned up). Goldring therefore met her burden of raising a genuine question of fact as to whether "the legal process justifying [her] seizure" for jaywalking "was constitutionally infirm." *See id.* at 1165. This also satisfied her burden of showing that the officers acted with malice: by establishing that the officers "violated [her] Fourth Amendment right to be free from seizures pursuant to legal process," Goldring "also established that [they] instituted criminal process against [her] with malice . . . ." *See Luke*, 975 F.3d at 1144.

The final question is whether Goldring's seizure "would not otherwise be justified without legal process" "as a warrantless arrest." *See Williams*, 965 F.3d at 1165, 1167. It wouldn't. Goldring's more than five-month "seizure was far too long to be justified without legal process." *See id.* at 1167; *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991) (holding that a person

cannot be held longer than forty-eight hours in custody after a
warrantless arrest without legal process).

To sum up, Goldring offered summary judgment evidence
in support of every element of her section 1983 malicious
prosecution claim.  She offered proof that the officers initiated a
criminal prosecution against her that terminated in her favor by
intentionally lying in the warrant application that she had
jaywalked, in violation of the Fourth Amendment, which resulted
in a seizure that couldn't be justified without legal process.
Because "the law is clearly established that the Constitution
prohibits a police officer from knowingly making false statements
in an arrest affidavit about the probable cause for an arrest in order
to detain a citizen if such false statements were necessary to the
probable cause," *Williams*, 965 F.3d at 1168–69 (alterations
adopted and citation omitted), Goldring "established a genuine
dispute over whether the officers violated [her] clearly established
rights under the Fourth Amendment" as to her seizure for
jaywalking, *id.* at 1169.  The district court correctly concluded that
the officers weren't entitled to qualified immunity at this stage of
the case.

## C.  The Trafficking in Cocaine Charge

Our analysis as to the trafficking in cocaine charge mirrors
how we analyzed the jaywalking charge.  We ask whether
Goldring "established a genuine dispute over whether the officers
violated [her] clearly established rights under the Fourth

Amendment" as to her seizure for trafficking cocaine. *Id.* Because the officers played different roles as to the drug test, we examine each officer separately.

### i. *Officer Henry*

Officer Henry argues he had arguable probable cause to believe that Goldring trafficked in cocaine. Any error he made in performing the field test was a reasonable one, he maintains, entitling him to qualified immunity. We disagree. There's summary judgment evidence here from which a jury could reasonably find that Officer Henry intentionally misstated the test results.

Goldring, who witnessed the field test, testified that Officer Henry grew frustrated and angry as he tested the sandy powder. She saw a third officer tell Officer Henry that he should "give it up" because the powder was "nothing" and was "not a drug." Goldring said that the field test was negative because she saw that the color "never changed" inside the pouch and "nothing happened to indicate the presence of an illicit substance."

From this evidence, "a reasonable jury could find that [Officer Henry] lied" about obtaining a "faint positive" test result. *See id.* at 1166. A jury could infer that Henry was frustrated during the test because he wasn't getting a positive result. A jury could infer that the third officer told Officer Henry the powder "was nothing" and wasn't a drug because he saw that Officer Henry wasn't getting a positive result. And a jury could infer that Officer

Henry knew the result he got wasn't positive—because it "never changed" color and wasn't "pink over blue"—yet he nevertheless claimed in the warrant application that the powder was cocaine.

Given these valid inferences, "the record presents a genuine dispute about whether" Officer Henry's allegation that the field test yielded a "faint positive" was a misstatement and whether that "misstatement in the warrant application was 'made either intentionally or in reckless disregard for the truth.'" *See id.* at 1166 (citation omitted). If the test solution never changed color, as Goldring alleged, "the chances are low that" Officer Henry was "subjectively mistaken" and truly believed that the solution changed color. *See id.* at 1166. Once again, "the record supports an inference that *someone* is lying" about whether the solution changed color during the field test. *See id.*

As to whether, after deleting the misstatement, the warrant affidavit was "insufficient to establish probable cause," *Paez*, 915 F.3d at 1287 (citation omitted), we conclude that it was insufficient. Other than the field test, the officers had no evidence that the powder in Goldring's stress ball was cocaine. Goldring didn't confess that the powder was cocaine, the officers didn't find other drugs or paraphernalia on her person suggesting that the powder was cocaine, and the officers couldn't tell what the powder was based on its appearance. In Officer Restrepo's words, there are "a jillion" white powders. Without a positive test result, the officers had no evidence to support probable cause; "probable cause evaporates after deleting the misstatement because it was the only

fact in the affidavit supporting probable cause for" trafficking in cocaine.  *See Williams*, 965 F.3d at 1166–67 (cleaned up).

Goldring therefore presented summary judgment evidence that "the legal process justifying [her] seizure" for trafficking in cocaine "was constitutionally infirm." *See id.* at 1165.  And, by showing that Officer Henry "violated [her] Fourth Amendment right to be free from seizures pursuant to legal process," she "established that [he] instituted criminal process against [her] with malice . . . ." *See Luke*, 975 F.3d at 1144.  Finally, Goldring's seizure for trafficking in cocaine couldn't be justified as a warrantless arrest; her seizure for the cocaine charge "was far too long to be justified without legal process." *See Williams*, 965 F.3d at 1167.

Thus, as to Officer Henry's involvement in Goldring's seizure for trafficking in cocaine, she "established a genuine dispute over whether [he] violated [her] clearly established rights under the Fourth Amendment." *See id.* at 1169.  As we have said, it is clearly established that officers cannot knowingly make false statements in a warrant application where those misstatements are necessary to probable cause. *See id.* at 1168–69.  Because Goldring established a genuine dispute about whether Officer Henry violated her clearly established rights by intentionally misstating the results of the field test in the warrant application, Officer Henry is not entitled to qualified immunity at this stage in the proceedings.

*ii.  Officer Restrepo*

Whether Officer Restrepo can be held liable for any misstatements in the warrant application as to the cocaine charge is a closer call.  He didn't perform the NARK II test and testified in deposition that he didn't see the results.  Officer Henry told him that the result was positive, he claimed, and Officer Restrepo took his partner at his word.  If a jury believed that testimony, there would be no basis for holding Officer Restrepo liable for intentional misstatements in the warrant.  *See United States v. Kirk,* 781 F.2d 1498, 1505 (11th Cir. 1986) ("Observations of fellow officers of the [g]overnment engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." (citation omitted)).

But Officer Restrepo stated in an internal affairs report that he *did* see the test result, which was a "faint positive."  A jury could reasonably infer from this inconsistency that Officer Restrepo saw the test result.  And if a jury believed Goldring's testimony and found that the field test "never changed" color and nothing otherwise "happened to indicate the presence of an illicit substance," a jury could reasonably conclude that Officer Restrepo knew that the test result was negative—and therefore knew that the allegation in the warrant about Goldring trafficking in cocaine was false.  *See Williams*, 965 F.3d at 1166 ("A reasonable jury could infer from these inconsistencies that the officers' statements were intentionally false.").

The rest of the qualified immunity analysis as to Officer Restrepo tracks our analysis as to Officer Henry.  There was no

probable cause to arrest Goldring for trafficking in cocaine absent the misstatement about the field test; by establishing that the legal process underlying her seizure was constitutionally infirm, Goldring established that Officer Restrepo acted with malice; her seizure was too long to be justified without legal process; and it is clearly established law that the Constitution prohibits an officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest where those false statements were necessary to establish probable cause. Thus, we affirm the district court's order concluding that both officers are not entitled to qualified immunity at this stage in the litigation.

## *Official Immunity and Actual Malice*

The officers argue there was no summary judgment evidence that they acted with actual malice or deliberately intended to commit a wrongful act. In the absence of proof of actual malice, the officers argue, they're entitled to official immunity as to Goldring's Georgia law malicious prosecution claim.

Under Georgia law, official immunity "protects an officer from personal liability arising from his performance of 'official functions' as long as the officer did not act with 'actual malice' or 'actual intent to cause injury.'" *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (quoting Ga. Const. art. I, § 2, para. IX(d)). Actual malice is the "deliberate intention to do wrong." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999) (citation omitted).

Official immunity "applies to an officer's 'discretionary actions taken within the scope of [his] official authority.'" *Gates*, 884 F.3d at 1304 (quoting *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001)).    An officer's decision to arrest a person is a discretionary action. *See, e.g.*, *Reed v. DeKalb Cnty.*, 589 S.E.2d 584, 587   (Ga. Ct. App. 2003) ("[T]he decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer.").   And how an officer investigates a case is also a discretionary action. *See City of Atlanta v. Heard*, 555 S.E.2d 849, 851, 853 (Ga. Ct. App. 2001) ("Heard also alleged that the [defendants] are liable for false arrest and malicious prosecution due to the detectives' improper investigation of the matter, including their failure to scrutinize certain evidence . . . . Considering similar allegations, however, we have held that the conduct of the arresting officers was discretionary . . . .").

As we have explained, this case comes down to two competing narratives.   Goldring testified that she didn't jaywalk and offered evidence that the officers knew the field test was negative.   The officers claimed she did jaywalk and they mistakenly believed the test result was positive.   If a jury believed Goldring and found that the officers applied for the warrant knowing they lacked probable cause, this would establish that they acted with actual malice. *See Lagroon v. Lawson*, 759 S.E.2d 878, 883 (Ga. Ct. App. 2014) (deputies not entitled to official immunity where "a jury reasonably could infer that [the officers] arrested [the plaintiffs] and

19-13820                Opinion of the Court                    23

took steps to secure grand jury charges against them despite knowing that they had not committed any offenses, 'thereby establishing that the officer[s] deliberately intended to do a wrongful act.'" (quoting *City of Atlanta v. Shavers*, 756 S.E.2d 204, 207 (Ga. Ct. App. 2014))).  Because "the relevant facts concerning the [officers'] behavior at the time of the alleged tort are in dispute," the district court correctly concluded that it couldn't "resolve the factual issues on a motion for summary judgment." *See Nichols v. Prather*, 650 S.E.2d 380, 387 (Ga. Ct. App. 2007).

## CONCLUSION

There are outstanding issues of fact in this case that cannot be resolved by summary judgment.  Determining what happened during Goldring's initial arrest and the field test "on this highly disputed factual record" is "exactly the sort of factual, credibility-sensitive task best left to the jury."  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1141 (11th Cir. 2007).  We affirm the district court's order denying the officers' claim of qualified and official immunity.

**AFFIRMED.**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 12, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-13820-JJ
Case Style:  Julius Goldring v. Vladimir Henry, et al
District Court Docket No:  1:18-cv-01191-WMR

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellants.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs